No. 21-16281

IN THE

# United States Court of Appeals
# for the Ninth Circuit

CARA JONES, ET AL.,

*Plaintiffs-Appellants*,

v.

GOOGLE LLC, ET AL.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of California,
No. 5:19-cv-07016-BLF
District Judge Beth Labson Freeman

**PETITION FOR PANEL REHEARING OR REHEARING EN BANC**

Edith Ramirez
Jessica L. Ellsworth
Adam A. Cooke
Jo-Ann Tamila Sagar
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
edith.ramirez@hoganlovells.com
jessica.ellsworth@hoganlovells.com
adam.a.cooke@hoganlovells.com
jo-ann.sagar@hoganlovells.com

Counsel for Defendants-Appellees
*Google LLC* and *YouTube LLC*

January 25, 2023

*(Additional Counsel Listed on Inside Cover)*

Jonathan H. Blavin
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
jonathan.blavin@mto.com

Attorneys for Defendant-Appellee
*Mattel, Inc.*

Jordan D. Segall
Ariel T. Teshuva
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
jordan.segall@mto.com
ariel.teshuva@mto.com

Anna Hsia
ZWILLGEN LAW LLP
369 Pine Street, Suite 506
San Francisco, CA 94104
Telephone: (415) 590-2335
Facsimile: (415) 636-5965
anna@zwillgen.com

Attorneys for Defendants-Appellees
*DreamWorks Animation L.L.C.* and
*DreamWorks Animation Television, LLC*

Jeffrey Landis *(pro hac vice)*
Adya Baker *(pro hac vice)*
ZWILLGEN LAW LLP
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 296-3585
Facsimile: (202) 706-5298
jeff@zwillgen.com
adya@zwillgen.com

Christopher Chorba
Jeremy S. Smith
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
cchorba@gibsondunn.com
jssmith@gibsondunn.com

Attorneys for Defendants-Appellees
*The Cartoon Network, Inc.* and *Cartoon
Network Studios, Inc.*

David E. Fink
Sarah E. Diamond
VENABLE, LLP
2049 Century Park East, Suite 2300
Los Angeles, CA  90067
Telephone:  (310) 229-9900
Facsimile:  (347) 229-9901
defink@venable.com
sediamond@venable.com

Attorneys for Defendant-Appellees
*PocketWatch, Inc.*

Angel A. Garganta
VENABLE LLP
101 California Street, Suite 3800
San Francisco, CA  94111
Telephone:  (415) 653-3750
Facsimile:  (415) 653-3755
aagarganta@venable.com

Jeremy S. Goldman
FRANKFURT KURNIT KLEIN &
SELZ P.C.
2029 Century Park East, Suite 2500N
Los Angeles, CA 90067
Telephone:  (310) 579-9600
Facsimile:  (347) 438-2156
jgoldman@fkks.com
alawrence@fkks.com

Attorneys for Defendants-Appellees
*Hasbro, Inc.* and *Hasbro Studios, LLC*

Michael J. Saltz
Elana R. Levine
JACOBSON, RUSSELL, SALTZ,
NASSIM & DE LA TORRE LLP
1880 Century Park East, Suite 900
Los Angeles, CA  90067
Telephone:  (310) 446-9900
Facsimile:  (310) 446-9909
msaltz@jrsnd.com
lani@jrsnd.com

Attorneys for Defendants-Appellants
*Remka, Inc.; RTR Production, LLC;* and
*RFR Entertainment, Inc*

# TABLE OF CONTENTS

INTRODUCTION AND RULE 35(b) STATEMENT........................................1

BACKGROUND ........................................................................................3

REASONS FOR GRANTING REHEARING ...................................................7

I.    THE PANEL'S PREEMPTION ANALYSIS IS
FUNDAMENTALLY FLAWED.........................................................7

    A.    The Panel Ignored Central Tenets of Statutory
Interpretation .................................................................7

    B.    The Panel's Analysis Conflicts With Prior
Decisions ...................................................................12

    C.    The Panel's Analysis Conflicts With The Third
Circuit's Decision in *Nickelodeon* ............................ 16

II.    THE PANEL'S FLAWED INTERPRETATION OF
COPPA's PREEMPTION PROVISION WILL HAVE
SERIOUS REPERCUSSIONS..........................................................17

CONCLUSION ......................................................................................19

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Att'ys Liab. Prot. Soc'y, Inc. v. Ingaldson Fitzgerald, P.C.*,
  838 F.3d 976 (9th Cir. 2016) ..............................................................................8

*Bank of Am. v. City & Cnty. of S.F.*,
  309 F.3d 551 (9th Cir. 2002) ..............................................................................7

*Beffa v. Bank of West*,
  152 F.3d 1174 (9th Cir. 1998) ..............................................................12, 14, 15

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001)..............................................................................11, 15

*Connell v. Lima Corp.*,
  988 F.3d 1089 (9th Cir. 2021) ..............................................................................8

*Gordon v. Virtumundo, Inc.*,
  575 F.3d 1040 (9th Cir. 2009) ..............................................................................11

*H.K. v. Google, LLC*,
  595 F. Supp. 3d 702 (C.D. Ill. 2022) ..............................................................18

*Ishikawa v. Delta Airlines, Inc.*,
  343 F.3d 1129 (9th Cir.), *as amended on denial of rh'g*, 350 F.3d
  915 (9th Cir. 2003)..............................................................12, 13, 14

*Manigault-Johnson v. Google LLC*,
  2019 WL 3006646 (D.S.C. Mar. 31, 2019) ..............................................................18

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996)..............................................................................2, 11

*Metrophones Telecomms., Inc. v. Global Crossing Telecomms., Inc.*,
  423 F.3d 1056 (9th Cir. 2005) ..............................................................10, 12, 13

*In re Nickelodeon Consumer Privacy Litig.*,
  827 F.3d 262 (3d Cir. 2016) ..............................................................3, 15, 16

*Puerto Rico v. Franklin California Tax-Free Trust*,
    136 S. Ct. 1938 (2016) ........................................................................... 2

*United States v. Mohrbacher*,
    182 F.3d 1041 (9th Cir.1999) .............................................................. 8

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    959 F.3d 1201 (9th Cir. 2020) ............................................................ 7

**STATUTES**

15 U.S.C. § 6502(b)(1)(A)(i) ................................................................... 4

15 U.S.C. § 6502(b)(1)(A)(ii) .................................................................. 5

15 U.S.C. § 6502(c) ..................................................................... 2, 5, 9, 10

15 U.S.C. § 6502(d) ..................................................................... *passim*

15 U.S.C. § 6504(a)(1) ......................................................................... 5, 9

15 U.S.C. § 6504(a)(2) ............................................................................ 9

15 U.S.C. § 6504(b) ................................................................................. 9

15 U.S.C. § 6504(d) ................................................................................. 9

15 U.S.C. § 6505(a) ........................................................................... 5, 9

15 U.S.C. § 6505(b) ........................................................................... 5, 9

15 U.S.C. § 6505(d) ...................................................................... 2, 5, 9

47 U.S.C. § 223(f)(2) ...................................................................... 5, 10

47 U.S.C. § 276(c) ................................................................................ 13

**REGULATIONS:**

16 C.F.R. § 312.11(g) ......................................................................... 17

**OTHER AUTHORITIES**

Rachael Malkin, *How the Children's Online Privacy Protection Act Affects Online Businesses and Consumers of Today and Tomorrow*, 14 Loy. Consumer L. Rev. 153, 165-68 (2002) ..............................17

## INTRODUCTION AND RULE 35(b) STATEMENT

Plaintiffs-Appellants seek to use state law as a vehicle for enforcing the federal Children's Online Privacy Protection Act ("COPPA"). But, as the District Court found, COPPA expressly preempts such state law claims. The Panel erred in reversing the District Court's ruling, deviating from well-established U.S. Supreme Court and Ninth Circuit preemption principles, and creating a split of authority. The decision will upset the careful balance Congress struck in COPPA and have profound consequences for creators and businesses nationwide.

Enacted to enhance parental control over children's online activities and to protect children's online privacy, COPPA requires website operators that collect personal information from children under 13 to act in accordance with regulations promulgated by the Federal Trade Commission ("FTC"). There is nothing in Plaintiffs' state law claims that is comparable to the detailed requirements set forth in COPPA and its implementing regulations, and, although COPPA has no private right of action, an alleged violation of COPPA's requirements is at the core of each of Plaintiffs' claims.

COPPA contains an express preemption clause that, as the Panel acknowledged, "appears unique." Panel Op. 11. Congress prohibits states from imposing "*any liability* for commercial activities or actions . . . in connection with an activity or action described in" COPPA "that is *inconsistent with the treatment* of

1

those activities or actions *under this section*." 15 U.S.C. § 6502(d) (emphasis added). The referenced section includes a detailed description of the way Congress intended COPPA to be enforced and any violations remedied. *See* 15 U.S.C. §§ 6502(c), 6505(d). Congress granted the FTC primary oversight and enforcement authority. And rather than including a private right of action, COPPA gives states through their attorneys general the ability to bring actions on behalf of their citizens, subject to coordination with the FTC. Private plaintiffs therefore cannot pursue private remedies under state law for COPPA violations. To permit claims like those Plaintiffs assert here would leave defendants facing potential liability, including private damages, that is *inconsistent* with COPPA's *treatment* of how activities and actions that allegedly violate the statute are to be redressed.

In a decision at odds with the Supreme Court's admonition that the plain wording of a preemption clause "necessarily contains the best evidence of Congress'[s] pre-emptive intent," *Puerto Rico v. Franklin California Tax-Free Trust*, 136 S. Ct. 1938, 1946 (2016) (citation omitted), the Panel reversed the District Court's dismissal of Plaintiffs' complaint. The Panel also overlooked that, in interpreting a statute's preemptive scope, a court must also look to "the structure and purpose of the statute as a whole." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (internal quotation marks omitted). In short, the Panel ignored the full statutory text and its structure and purpose, failing even to discuss the detailed remedial scheme

2

referenced in COPPA's preemption provision. Because of that error, the Panel's analysis is fundamentally flawed.

The Panel's decision also conflicts with the only other federal appellate decision interpreting COPPA's preemptive reach. In *In re Nickelodeon Consumer Privacy Litigation*, the Third Circuit permitted state law claims to proceed only because the state law claims addressed a *different* harm than the one targeted by COPPA. 827 F.3d 262 (3d Cir. 2016). Underpinning that holding was the recognition that state law claims based on conduct allegedly violating COPPA are preempted. Yet the Panel neither discusses nor even cites the Third Circuit's decision.

The Panel's decision will have far-reaching consequences. COPPA established a uniform nationwide standard governing the personal information online service providers can legally collect from children under 13, a standard critical to parents, children, and organizations that create and deliver online content and services for children. The proper interpretation of COPPA's preemption provision is thus exceptionally important, including to the many technology companies that operate nationwide. Further review is appropriate, and this Court should grant panel rehearing or rehearing en banc.

## BACKGROUND

1. YouTube, a subsidiary of Google (collectively, "Google"), is an online

video-sharing platform that allows users to upload, share, and view video content. *See* 2-ER-160; 2-ER-168; 2-ER-170. Creators who upload and provide content range from individuals to large organizations, and that content is organized into channels. When users access content on YouTube channels, they are subject to YouTube's Terms of Service ("Terms"), which incorporate Google's Privacy Policy. SER-105. The Terms emphasize that YouTube is only for users "over the age of 13, as the Service is not intended for children under 13." SER-117-118; *see also* 2-ER-180. The Terms caution: "If you are under 13 years of age, then please do not use the Service. There are lots of other great web sites for you. Talk to your parents about what sites are appropriate for you." SER-118. The Privacy Policy, in turn, explains that Google collects the following types of information from users when they use Google services: "information about the apps, browsers, and devices you use to access Google services" (*e.g.*, operating system); "information about your activity in our services" (*e.g.*, videos watched); and "information about your location when you use our services" (*e.g.*, IP address). SER-72-75; *see also* 2-ER-170-173.

2. Through COPPA, Congress regulates the personal information online service providers can legally collect from children. COPPA requires operators of websites or online services directed to children under the age of 13 to provide notice of the information they collect, the use of that information, and the operator's information disclosure practices. 15 U.S.C. § 6502(b)(1)(A)(i). The operator must

also obtain parental consent for the collection, use, or disclosure of certain personal information from children under 13.  *Id.* § 6502(b)(1)(A)(ii).

Congress placed the FTC in charge of implementing and enforcing these requirements, specifying that it would have primary enforcement authority over COPPA, 15 U.S.C. §§ 6502(c), 6505(d), with other federal agencies retaining authority over entities they oversee, *id.* §§ 6505(a), (b), and state attorneys general permitted to bring "*parens patriae*" actions in cooperation with the FTC, *id.* § 6504(a)(1).  Notably, COPPA does not include a private right of action.

3. COPPA also has a preemption provision that protects the federal scheme. It provides that:

> No State or local government may impose any liability for commercial activities or actions by operators in interstate or foreign commerce in connection with an activity or action described in this chapter that is inconsistent with the treatment of those activities or actions under this section.

*Id.* § 6502(d).  The referenced section includes enforcement provisions. *Id.* § 6502(c).  Congress did not include a "savings clause" preserving any state law claims in COPPA, although it has done so in other statutes.  *Compare* 15 U.S.C. § 6502(d) *with* Communications Decency Act, 47 U.S.C. § 223(f)(2).

4. In September 2019, the FTC, together with the New York Attorney General ("NYAG"), brought an enforcement action against Google for alleged violations of COPPA (the "FTC Action").  *See* SER-154-172.  Without admitting liability, Google

agreed to a permanent injunction and civil penalty of $170 million, embodied in a stipulated order that was approved and entered by the court. *See* SER-121-152. The injunction imposed several detailed obligations, including that Google would (1) notify channel owners their content may be subject to COPPA; (2) provide notice about data collection practices and obtain verifiable parental consent before collecting personal information from children; and (3) not disclose, use, or benefit from information collected prior to the injunction. *Id*.

5. Shortly after the court entered the stipulated injunction in the FTC Action, Plaintiff Nichole Hubbard, as parent of minor child C.H., filed a putative class action against Google and an assortment of channel owners. The complaint, relying heavily on allegations in the FTC Action, asserted that Google violated state laws by collecting and using, without parental consent, the information of C.H. and other putative class members when they allegedly viewed videos on YouTube (*i.e.*, alleged COPPA violations). SER-255-257; SER-290-295. The complaint was amended multiple times to add new Plaintiffs and more state law claims. SER-178-179; SER-225-230; SER-231-243; 3-ER-348-423.

The district court dismissed the complaint, finding that COPPA expressly preempted Plaintiffs' state law claims. 1-ER-10; 1-ER-12. The court recognized that COPPA's preemption clause "establishes that state laws are preempted if they impose liability 'inconsistent with the treatment of those activities or actions under

this section,'" and that "treatment" includes "enforcement by the FTC and state attorneys general." 1-ER-12 (quoting 15 U.S.C. § 6502(d)). Because Plaintiffs fail to adequately allege "deceptive conduct that places Defendants' behavior outside of what is regulated by COPPA," the court found that their suit "is 'inconsistent with the treatment' and thus preempted." 1-ER-12-13.

A Panel of this Court reversed, finding that Plaintiffs' claims were neither explicitly nor impliedly preempted by COPPA.[1]

## REASONS FOR GRANTING REHEARING

## I.    THE PANEL'S PREEMPTION ANALYSIS IS FUNDAMENTALLY FLAWED

### A.    The Panel Ignored Central Tenets of Statutory Interpretation

As the Panel recognized, "[e]xpress preemption is a question of statutory construction, requiring a court to look to the plain wording of the statute and surrounding statutory framework to determine whether Congress intended to preempt state law." Panel Op. 10 (citing *In re Volkswagen "Clean Diesel" Mktg.*,

---

[1] The Panel held that "express and conflict preemption . . . effectively collapse into one when the preemption clause uses the term 'inconsistent,'" and relied on its reasoning regarding express preemption in concluding there was no implied preemption. Panel Opp. at 11, 14. This petition therefore focuses on the flaws in the Panel's express preemption analysis. Implied preemption principles also support granting rehearing here because Plaintiffs' state law claims "stan[d] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Bank of Am. v. City & Cnty. of S.F.*, 309 F.3d 551, 558 (9th Cir. 2002) (internal citation and quotation marks omitted).

*Sales Pracs., & Prod. Liab. Litig.*, 959 F.3d 1201, 1211 (9th Cir. 2020)). The Panel acknowledged that COPPA's preemption clause "appears unique." Panel Op. 11-12. But it did not treat the clause as unique and was "not persuaded" that the different text—including the word "*treatment*"—"chang[ed] the scope" of COPPA's preemption clause, as compared to other, more narrow preemption clauses that bar only inconsistent state law "requirements." *Id.* On that basis, the Panel reversed the District Court and held that Plaintiffs' claims are not preempted.

By reading out of the statute several key aspects of COPPA's preemption provision, the Panel's reasoning broke with basic precepts of statutory interpretation. A court "must interpret a statute to give effect to *all* of its parts." *Att'ys Liab. Prot. Soc'y, Inc. v. Ingaldson Fitzgerald, P.C.*, 838 F.3d 976, 981-82 (9th Cir. 2016) (emphasis added) (internal citation and quotation marks omitted). This includes "giv[ing] effect, if possible, to *every word* Congress used, without rendering words superfluous, void, or insignificant," *Connell v. Lima Corp.*, 988 F.3d 1089, 1097 (9th Cir. 2021) (emphasis added) (internal citations and quotation marks omitted), considering "the purpose of the statute 'in its entirety,'" and examining "whether the proposed interpretation would frustrate or advance that purpose." *United States v. Mohrbacher*, 182 F.3d 1041, 1049 (9th Cir. 1999).

Read in full, COPPA's preemption clause expressly prohibits "*any liability* for commercial activities . . . described in this chapter *that is inconsistent with the*

*treatment of those activities or actions under this section*."  15 U.S.C. § 6502(d) (emphasis added).   The referenced "section"—Section 6502—includes four subsections, one of which is titled "Enforcement," which sets forth precisely how Congress envisioned COPPA violations would be treated.  *Id.* § 6502(c).  The enforcement subsection provides that "[s]ubject to section[] … 6505 of this title," a violation of COPPA "shall be treated as a violation of a rule defining an unfair or deceptive act or practice" under the FTC Act.  *Id*. § 6502(c).  And the cross-referenced section—section 6505—makes clear that the FTC has primary enforcement authority over COPPA's provisions, *id.* §§ 6505(a), 6505(d), with certain other federal agencies retaining authority over entities they oversee, *id.* § 6505(b).

As part of COPPA's detailed remedial scheme, Congress also carved out a role for the states. State attorneys general may bring actions on behalf of their citizens, *id*. § 6504(a)(1), but before proceeding they must give the FTC notice, *id.* § 6504(a)(2), and the FTC has a statutory right to intervene in the state's suit.  *Id*. § 6504(b).  The statute ensures the lead role of the FTC by preventing states from "institut[ing]" duplicative actions during the "pendency" of a parallel FTC proceeding.  *Id.* § 6504(d).  There is no private right of action under COPPA, or under the FTC Act, the statute under which COPPA violations are to "be treated."

Notably, unlike other statutory preemption provisions—including the only other preemption provision Google is aware of containing language similar to that found in COPPA—COPPA's preemption clause does not contain a "savings clause" permitting states to impose "complementary" enforcement. *Compare* 15 U.S.C. § 6502(d) *with* 47 U.S.C. § 223(f)(2) ("savings clause" included in preemption provision).

The word "*treatment*" is thus not the only difference between COPPA's preemption clause and the preemption clauses that this Court has examined in the past. COPPA's preemption clause explicitly references the statute's "*[e]nforcement*" provisions. 15 U.S.C. §§ 6502(c), (d) (emphasis added). By the provision's plain terms, *inconsistent treatment* extends to *inconsistent enforcement*, too. Because of the preemption clause's express reference to "enforcement," COPPA's preemption provision requires an analysis of *both* the *substantive requirements* of state law as compared to COPPA *and* the *remedial approach* under each scheme. COPPA's preemption provision therefore cannot be equated with preemption provisions that refer only to inconsistent "requirements" or that include other language narrowing the statute's preemptive scope. *See, e.g.*, *Metrophones Telecomms., Inc. v. Global Crossing Telecomms., Inc.*, 423 F.3d 1056, 1072 (9th Cir. 2005) ("*Metrophones*") (analyzing preemption clause barring "*state requirements* that are inconsistent with the [FCC's] regulations," where the

regulations themselves "contemplate[d]" that state contract law would apply (emphasis added)). To do so impermissibly reads the word "treatment" out of the statute.

Reading COPPA's preemption clause as encompassing the enforcement scheme aligns with the statutory framework Congress put in place. In analyzing a statute's preemptive scope, courts must consider "the structure and purpose of the statute as a whole . . . as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (internal quotations marks omitted); *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1060 (9th Cir. 2009) (preemption analysis requires consideration of the "structure and purpose of the statute as a whole" (internal quotation marks omitted)).

With COPPA, Congress created a new and uniform federal standard governing the online collection and use of personal information from children under 13. Recognizing the need for flexibility in an evolving digital landscape, Congress tasked the FTC with promulgating and updating rules to account for changing practices and required state attorneys general to coordinate with the FTC when bringing enforcement actions. Because private plaintiffs have no corresponding obligation to inform or involve the FTC, private enforcement would undermine the

FTC's role in the statutory scheme and could well lead to different requirements and remedies, including private damages, for children's privacy in different states. *C.f. Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349-50 (2001) (state law claims seeking to enforce the Food, Drug, and Cosmetics Act impliedly preempted because they "inevitably conflict with FDA's responsibility to police fraud consistently with the Agency's judgment and objectives," including by seeking injunctions, civil penalties, and criminal prosecutions). The Panel failed altogether to take such considerations into account.

The Panel's failure to engage with the statute's text, structure, and purpose resulted in a decision that wholly fails to carry out Congress's preemptive intent.

### B.     The Panel's Analysis Conflicts With Prior Decisions

In failing to give effect to COPPA's plain text and statutory framework, the Panel's analysis conflicts with the very cases it cites. The Panel held that Plaintiffs' suit is not preempted by COPPA because, in "*Metrophones*, *Ishikawa*, and *Beffa*," the Panel "read the statutory term 'inconsistent' . . . to refer to contradictory state law requirements, or to requirements that stand as obstacles to federal objectives." Panel Op. 11 (citing *Metrophones*, 423 F.3d 1056; *Ishikawa v. Delta Airlines, Inc*., 343 F.3d 1129 (9th Cir.), *as amended on denial of rh'g*, 350 F.3d 915 (9th Cir. 2003); *Beffa v. Bank of West*, 152 F.3d 1174 (9th Cir. 1998)). From that, the Panel concluded that "state laws that 'supplement' or 'require the same thing' as federal

12

law, do not 'stand[] as an obstacle,' to Congress's objectives, and so are not 'inconsistent.'" *Id*. at 12 (internal citations omitted). But nothing in *Metrophones*, *Ishikawa*, or *Beffa* supports the Panel's view that the use of the term "inconsistent" in a preemption clause must refer to "contradictory state law requirements." To the contrary, these cases hold that the controlling factor in preemption analysis is the plain language, read in the context of the statute as a whole. The Panel's ruling failed to do that.

In *Metrophone*s, for example, the federal telecommunications statute at issue preempted "[s]tate requirements" that were "inconsistent with the [FCC's] regulations." 423 F.3d at 1072 (quoting 47 U.S.C. § 276(c)). In addition to the explicit reference to "state requirements," as opposed to the *treatment* of the regulated activity, the relevant regulations "contemplate[d]" that "state contract law, not the federal regulations, would govern the resolution of" certain questions related to contracts between telecommunications companies. *Id*. at 1076. This Court thus held that state law claims for quantum meruit and breach of implied contract were not preempted, *id*. at 1075-78, while the state law claim that did not sound in contract—negligence—was preempted. *Id*. at 1078. In contrast, nothing in either COPPA or its implementing regulations explicitly preserves state law claims like Plaintiffs'.

Similarly, in *Ishikawa*, the federal preemption provision at issue was limited

to state laws that were "inconsistent with regulations" related to drug testing. The regulations in question expressly provided that employees could "not be required to waive liability with respect to negligence" concerning "the collection, handling, or analysis of" specimens. 343 F.3d at 1132-33 (internal quotations omitted). It is thus unsurprising that the Court held that the plaintiff's negligence claim against a drug testing laboratory was not preempted. *Id.* at 1131, 1133. Again, no equivalent language in COPPA suggests that Plaintiffs' state law claims fall outside its preemptive scope.

*Beffa* also conflicts with the Panel's reasoning. The statute at issue there, the Expedited Funds Availability Act ("EFAA"), required that deposited funds be available for withdrawal by the next business day. *Id*. at 1176. The plaintiff sued the defendant bank—not for delayed deposit availability—but because the bank had deposited the plaintiff's money into the wrong account. This Court held that the plaintiff's state law negligence claim was not preempted by EFFA. As this Court explained: "Clearly, EFAA preempts state law pertaining to the timing of availability of deposited funds. Beffa's negligence claim, however, addresses a separate wrong, negligent deposit to the wrong account . . . . [S]uch claims are not inconsistent with the purposes of EFAA." *Id.* at 1177. The same was true of the plaintiff's intentional and negligence misrepresentation claims, which "involve[d] elements that [were] beyond the scope of the EFFA." *Id.* at 1178.

14

Plaintiffs' claims here do not "address a separate wrong" that is "beyond the scope" of COPPA. Just the opposite. Plaintiffs' claims, though styled as arising under state law, are premised primarily on the specific set of requirements found only in COPPA regarding collection of "persistent identifiers" and issues of "verifiable parental consent" for children under 13. *See, e.g.*, 2-ER-161, 162, 170-73, 214-15.[2] Indeed, the fact that Plaintiffs' claims derive wholly from COPPA underscores why allowing them to proceed would undermine the carefully calibrated remedial structure Congress created. Plaintiffs do not seek to enforce state standards regarding children's privacy; they seek to enforce COPPA and graft its detailed requirements onto state law. That is yet another reason they should be preempted. *See Buckman,* 531 U.S. at 352-353 (2001) (impliedly preempting state law claims arising "solely by virtue of" federal requirements).

In holding otherwise, the Panel failed to give full weight to COPPA's unique preemption clause, creating a conflict with well-established Supreme Court and Ninth Circuit preemption principles. This Court should grant rehearing to restore the uniformity of its decisions.

---

[2] While the parties agree that Plaintiffs are attempting to allege violations of COPPA, Defendants are not, as the Panel suggests, Panel Op. at 7-8, conceding that the allegations in the complaint amount to COPPA violations.

15

**C.     The Panel's Analysis Conflicts With The Third Circuit's Decision in *Nickelodeon***

In reversing the District Court, the Panel also parted ways with the only other federal appellate court to have interpreted COPPA's preemption provision.  *See In re Nickelodeon*, 827 F.3d 262.  Much as this Court did in *Beffa*, the Third Circuit in *Nickelodeon* permitted the plaintiffs' state law claims to go forward only because those claims addressed a harm separate from the one targeted by the federal government in COPPA.  The plaintiffs in *Nickelodeon* alleged that Viacom had collected children's information "using deceitful tactics" by falsely stating that "[w]e don't collect ANY personal information about your kids."  *Id.* at 269.  The Third Circuit therefore found that "the wrong at the heart" of the plaintiffs' claim was not that defendants "collected children's personal information," but that the information was "obtained . . . under false pretensions."  *Id*. at 292 (emphasis added).  Because the plaintiffs' state law claims there focused on deception—not information collection——the Third Circuit concluded that "there is no conflict between the plaintiffs' intrusion claim and COPPA."  *Id.*  "While COPPA certainly regulates whether personal information can be collected from children in the first instance, it says nothing about whether such information can be collected using deceitful

16

tactics," meaning that "COPPA leaves the states free to police this kind of deceptive conduct." *Id.*

Undergirding the Third Circuit's reasoning is the conclusion that state law claims alleging wrongful conduct within COPPA's scope would be preempted. This conclusion is squarely at odds with the Panel's decision to permit state law claims alleging the same harm as COPPA. *See* Panel Op. 12. And yet the Panel wholly ignored the Third Circuit's decision. This Court should grant panel rehearing or rehearing *en banc* to reconcile its analysis with that of its sister circuit.

## II. THE PANEL'S FLAWED INTERPRETATION OF COPPA'S PREEMPTION PROVISION WILL HAVE SERIOUS REPERCUSSIONS

The Panel's atextual analysis will have far-reaching consequences. COPPA has provided a uniform standard for children's online privacy nationwide, led by the nation's expert privacy agency—the FTC—enabling individuals and organizations alike to navigate this important area of law. That is especially true for the countless creators and businesses whose online operations span geographical boundaries and provide services directed to children. *See generally*, Br. of Chamber of Commerce. Indeed, COPPA has fundamentally changed and shaped online business. *See, e.g.*, Rachael Malkin, *How the Children's Online Privacy Protection Act Affects Online*

*Businesses and Consumers of Today and Tomorrow*, 14 Loy. Consumer L. Rev. 153, 165-68 (2002).

By gutting COPPA's preemptive sweep and sanctioning private plaintiff enforcement, the Panel has upended the careful balance Congress struck. Under the Panel's interpretation of the statute, online operators now will have to contend with a patchwork of different regulatory regimes for children's privacy across state and local boundaries. That includes potentially conflicting remedies about critical issues like how entities treat data collected from children. Private plaintiff litigation also could undercut COPPA's "safe harbor" program, which the FTC must take into account before initiating an enforcement action. 16 C.F.R. § 312.11(g). And this risk is not theoretical. Google alone has also faced other private plaintiff actions challenging how it collects and retains children's data under state law. *See H.K. v. Google, LLC*, 595 F. Supp. 3d 702 (C.D. Ill. 2022); *Manigault-Johnson v. Google LLC*, 2019 WL 3006646 (D.S.C. Mar. 31, 2019). These suits will only proliferate, further splintering how children's privacy is regulated across the country.

Congress sought to avoid the potential for chaos and confusion by preempting inconsistent substantive requirements *and* remedial regimes. The Panel undoes Congress's careful work in an area where national uniformity is of paramount importance.

**CONCLUSION**

For the foregoing reasons, this Court should grant rehearing or en banc review of the Panel decision.

January 25, 2023

Respectfully submitted,

/s/ Edith Ramirez
Edith Ramirez
Jessica L. Ellsworth
Adam A. Cooke
Jo-Ann Tamila Sagar
HOGAN LOVELLS US LLP

*Counsel for* Defendants-Appellees
*Google LLC* and *YouTube LLC*

January 25, 2023

/s/ Jonathan H. Blavin
Jonathan H. Blavin
Jordan D. Segall
Ariel T. Teshuva
MUNGER, TOLLES & OLSON LLP

*Counsel* for Defendant-Appellee
*Mattel, Inc.*

January 25, 2023

/s/ Anna Hsia
Anna Hsia
Jeffrey Landis (*pro hac vice*)
Adya Baker (*pro hac vice*)
ZWILLGEN LAW LLP

*Counsel* for Defendant-Appellees
*DreamWorks Animation L.L.C.* and
*DreamWorks Animation Television, LLC.*

January 25, 2023

/s/ Christopher Chorba
Christopher Chorba
Jeremy S. Smith
GIBSON, DUNN & CRUTCHER
LLP

*Counsel* for Defendant-Appellees
*The Cartoon Network, Inc.* and
*Cartoon Network Studios, Inc.*

January 25, 2023

/s/ Jeremy Goldman
Jeremy Goldman
FRANKFURT KURNIT KLEIN &
SELZ P.C.

*Counsel* for Defendant-Appellees
*Hasbro, Inc.* and *Hasbro Studios
LLC*

January 25, 2023

/s/ David E. Fink
David E. Fink
Angel A. Garganta
Sarah E. Diamond
VENABLE, LLP

*Counsel* for Defendant-Appellee
*PocketWatch, Inc.*

January 25, 2023

/s/ Michael J. Saltz
Michael J. Saltz
Elana R. Levine
JACOBSON, RUSSELL, SALTZ,
NASSIM & DE LA TORRE LLP

*Counsel* for Defendant-Appellee
*Remka, Inc.; RTR Production, LLC;*
and *RFR Entertainment, Inc.*

20

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)**  | 21-16281 |

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

○ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words**: | 4,183 | .

*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/ Edith Ramirez |  **Date** | January 25, 2023 |

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 11**                                                               *Rev. 12/01/2021*

# ADDENDUM

**FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

| | |
|---|---|
| CARA JONES, as parent and guardian of E.J., N.J., A.J., and L.J., minors; JUSTIN EFROS, as parent and guardian of J.A.E. and J.R.E., Minors; NICHOLE HUBBARD, as parent and guardian of C.H., a minor; individually and on behalf of all others similarly situated; RENEE GILMORE, as parent and guardian of M.W., a minor; JAY GOODWIN, as parent and guardian of A.G., a minor; BOBBI DISHMAN, as parent and guardian of C.D., a minor; PAULA RIDENTI, as parent and guardian of R.A. and R.M.A., minors; C.H.; E.J.; N.J.; A.J.; L.J.; J.A.E.; J.R.E.; M.W.; A.G.; C.D., | No. 21-16281<br><br>D.C. No. 5:19-cv-07016-BLF<br><br><br>OPINION |
| *Plaintiffs-Appellants,* | |
| v. | |
| GOOGLE LLC; YOUTUBE, LLC; MATTEL, INC.; DREAMWORKS ANIMATION LLC; HASBRO, INC.; HASBRO STUDIOS, LLC; THE CARTOON NETWORK, INC.; CARTOON NETWORK STUDIOS, INC.; POCKETWATCH, INC.; | |

**Add. 1**

REMKA, INC.; RTR PRODUCTION, LLC; RFR ENTERTAINMENT, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of California
Beth Labson Freeman, District Judge, Presiding

Argued and Submitted August 31, 2022
Seattle, Washington

Filed December 28, 2022

Before:  Michael Daly Hawkins, M. Margaret McKeown,
and Gabriel P. Sanchez, Circuit Judges.

Opinion by Judge McKeown

## **SUMMARY**[*]

### **Preemption / Children's Online Privacy Protection Act**

The panel reversed the district court's dismissal, on preemption grounds, of a third amended complaint in an action brought by a class of children, appearing through their

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

guardians ad litem, against Google LLC and others, alleging that Google used persistent identifiers to collect data and track their online behavior surreptitiously and without their consent in violation of the Children's Online Privacy Protection Act ("COPPA").

Google owns YouTube, a widely used online video-sharing platform that is popular among children. Google's targeted advertising is aided by sophisticated technology that delivers curated, customized advertising based on information about specific users. Google's technology depends partly on what Federal Trade Commission ("FTC") regulations call "persistent identifiers," which is information "that can be used to recognize a user over time and across different Web sites or online services." 16 C.F.R. § 312.2. In 2013, the FTC adopted regulations under COPPA that barred the collection of children's "persistent identifiers" without parental consent.

The plaintiff class alleges that Google used persistent identifiers to collect data and track their online behavior surreptitiously and without their consent. They plead only state law claims arising under the constitutional, statutory, and common law of California, Colorado, Indiana, Massachusetts, New Jersey, and Tennessee, but also allege Google's activities violate COPPA. The district court held that the "core allegations" in the third amended complaint were squarely covered, and preempted, by COPPA.

The panel considered the question of whether COPPA preempts state law claims based on underlying conduct that also violates COPPA's regulations. The Supreme Court has identified three different types of preemption—express, conflict, and field. First, express preemption is a question of statutory construction. COPPA's preemption clause

provides: "[n]o State or local government may impose any
liability . . . that is inconsistent with the treatment of those
activities or actions under this section." 15 U.S.C. §
6502(d). The panel held that state laws that supplement, or
require the same thing, as federal law, do not stand as an
obstacle to Congress' objectives, and are not
"inconsistent." The panel was not persuaded that the
insertion of "treatment" in the preemption clause here
evinced clear congressional intent to create an *exclusive*
remedial scheme for enforcement of COPPA
requirements. If exercising state-law remedies does not
stand as an obstacle to COPPA in purpose or effect, then
those remedies are treatments consistent with COPPA. The
panel concluded that COPPA's preemption clause does not
bar state-law causes of action that are parallel to, or proscribe
the same conduct forbidden by, COPPA. Accordingly,
express preemption does not apply to the plaintiff class's
claims. Second, even if express preemption is not
applicable, preemptive intent may be inferred through
conflict preemption principles. The panel held that although
express and conflict preemption are analytically distinct
inquiries, they effectively collapse into one when the
preemption clause uses the term "inconsistent." For the
same reasons that the panel concluded there was no express
preemption, the panel concluded that conflict preemption did
not bar the plaintiffs' claims.

The panel reversed the district court's dismissal on
preemption grounds, and remanded so that the district court
could consider in the first instance the alternative
arguments for dismissal, to the extent those arguments were
properly preserved.

## COUNSEL

David S. Golub (argued), Steven L. Bloch, and Ian W. Sloss, Silver Golub & Teitell LLP, Stamford, Connecticut; Jonathan K. Levine, Elizabeth C. Pritzker, and Caroline C. Corbitt, Pritzker Levine LLP, Emeryville, California; Edward F. Haber, Shapiro Haber & Urmy LLP, Boston, Massachusetts; for Plaintiffs Appellants.

Edith Ramirez (argued), Adam A. Cooke (argued), Michelle A. Kisloff, and Jo-Ann Tamila Sagar, Hogan Lovells US LLP, Washington, D.C.; Christopher Cox, Hogan Lovells US LLP, Menlo Park, California; Helen Yiea Trac, Hogan Lovells LLP, San Francisco, California; Christopher Chorba and Jeremy S. Smith, Gibson Dunn & Crutcher LLP, Los Angeles, California; Anna Hsia, Zwillgen Law LLP, San Francisco, California; Jefferey Landis and Adya Baker, Zwillgen Law PLLC, Washington, D.C.; Jonathan H. Blavin, Munger Tolles & Olson LLP, San Francisco, California; Jordan D. Segall and Ariel T. Teshuva, Munger Tolles & Olson LLP, Los Angeles, California; Michael J. Saltz and Elana R. Levine, Jacobson Russell Saltz Nassim & De La Torre LLP, Los Angeles, California; Jeremy S. Goldman, Frankfurt Kurnit Klein & Selz PC, Los Angeles, California; David E. Fink and Sarah E. Diamond, Venable LLP, Los Angeles, California; Angel A. Garganta, Venable LLP, San Francisco, California; for Defendants-Appellees.

Derek L. Shaffer, Quinn Emanuel Urquhart & Sullivan LLP, Washington, D.C.; Tyler S. Badgley, United States Chamber Litigation Center, Washington, D.C.; for Amicus Curiae Chamber of Commerce of the United States of America.

## OPINION

McKEOWN, Circuit Judge:

The Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. §§ 6501–06, gives the Federal Trade Commission ("FTC") authority to regulate the online collection of personal identifying information about children under the age of 13. The statute includes a preemption clause that provides that "[no] State or local government may impose any liability . . . inconsistent with the treatment of those activities or actions under this section." *Id.* § 6502(d). Hewing closely to the language of the preemption clause, we determine that Congress intended to preempt *inconsistent* state laws, not state laws that are *consistent* with COPPA's substantive requirements, such as the state law causes of action pleaded in the complaint here.

### BACKGROUND

Google, best known for its popular search engine, also owns YouTube, a widely used online video-sharing platform. YouTube videos are particularly popular among children, who increasingly have smartphones and tablets that allow them to access the platform without age verification. As a testament to YouTube's popularity among kids, several popular toy and cartoon brands maintain YouTube "channels," where they post content and run advertisements designed to appeal to young audiences.

Google's targeted advertising is aided by sophisticated technology that delivers curated, customized advertising based on information about specific users. Its tracking tools can keep tabs on users' search history, video viewing history, personal contacts, browsing history, location

information, and several other bits of information about users' habits and preferences, including activity on websites and platforms not owned by Google. Together, these pieces of information comprise detailed individual "profiles" of users' attributes and behaviors, extremely valuable tools for the advertisers who seek to capitalize on this deep trove of information about their targeted audiences. The revenue from these targeted ads is split between Google and the owners of the relevant YouTube channels; indeed, Google, whose search and video platforms are largely free to its users, makes most of its money through ad revenue.

Google's technology depends partly on what FTC regulations call "persistent identifiers," information "that can be used to recognize a user over time and across different Web sites or online services." 16 C.F.R. § 312.2. Examples include users' Internet Protocol addresses ("IP addresses"), numerical labels assigned to each device connected to the Internet. Google tracks users' IP addresses on all webpages using Google's advertising services. In 2013, the FTC adopted regulations under COPPA that barred the collection of children's "persistent identifiers" without parental consent. 16 C.F.R. §§ 312.2, 312.5.

In this putative class action, plaintiffs are several minor children (collectively "the Children") suing through guardians ad litem, alleging that Google used persistent identifiers to collect data and track their online behavior surreptitiously and without their consent. They seek damages and injunctive relief, asserting only state law claims: invasion of privacy, unjust enrichment, consumer protection violations, and unfair business practices, arising under the constitutional, statutory, and common law of California, Colorado, Indiana, Massachusetts, New Jersey, and Tennessee. The parties agree that all of the claims allege

conduct that would violate COPPA's requirement that child-directed online services give notice and obtain "verifiable parental consent" before collecting persistent identifiers.

The complaint names two sets of defendants. First are Google LLC and YouTube, LLC, which together own and operate the YouTube platform (collectively "Google"). Second are numerous content creators that uploaded child-directed content to YouTube, including major toy brands and a television network that showcases cartoons (collectively the "Channel Owners"). Although the Children plead only state law causes of action, they also allege that Google's data collection activities violated COPPA, and that Google falsely represented that COPPA's requirements did not apply to YouTube, reasoning that it was a platform for adults, even while knowing that children use the platform. The complaint alleges that Google did not configure YouTube to comply with COPPA until January 2020, after reaching a settlement with the FTC and the New York Attorney General in the fall of 2019. As for the Channel Owners, the complaint alleges that they lured children to their channels, knowing that the children who viewed content on YouTube would be tracked, profiled, and targeted by Google for behavioral advertising.

The district court dismissed the Second Amended Complaint, concluding that the Children's claims were expressly preempted by COPPA, 15 U.S.C. § 6502(d). The Children filed a Third Amended Complaint, adding additional details about the allegedly deceptive conduct. The court again held that the "core allegations" in that complaint were "squarely covered, and preempted, by COPPA." Regarding the deceptive conduct amendments, the court held that the Children had again "failed to allege deception beyond what is regulated by COPPA." The court

granted the Children leave to file another amended complaint "if they can substitute proper plaintiffs to represent persons in the 13-16 age range"—*i.e.*, older than COPPA's cutoff at 13 years old.  The Children informed the district court that they did not intend to further amend and filed this appeal instead.

## ANALYSIS

Under COPPA and its regulations, companies that operate websites and online services marketed toward children must provide certain disclosures about their data collection activities and must safeguard the confidentiality, security, and integrity of the children's personal online information. 15 U.S.C. § 6501–06; 16 C.F.R. §§ 312.1–13. COPPA does not authorize a private right of action. Rather, the statute confers enforcement authority on the FTC, 15 U.S.C. § 6505(a), and on state attorneys general, who must notify the FTC and cooperate with it to bring civil actions as parens patriae, *id.* § 6504(a).    Several other specified agencies retain enforcement authority over the entities that they oversee. *Id.* § 6505(b).

This appeal presents the question whether COPPA preempts state law claims based on underlying conduct that also violates COPPA's regulations.  Preemption derives from the Supremacy Clause, which "invalidates state laws that interfere with, or are contrary to federal law." *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712–13 (1985) (quotation and citation omitted).  The Supreme Court has identified "three different types of preemption"—express, conflict, and field.    *Murphy v. NCAA*, 138 S. Ct. 1461, 1480 (2018).  The district court based its dismissal on express preemption; Google and the Channel Owners argue in the alternative that the claims are

conflict-preempted. Field preemption was not argued by any party and so we do not reach that question here. We review de novo the district court's dismissal of the complaint on preemption grounds. *Metrophones Telecomms., Inc. v. Glob. Crossing Telecomms., Inc.*, 423 F.3d 1056, 1063 (9th Cir. 2005), *aff'd*, 550 U.S. 45 (2007).

## I. Express Preemption

The "clear statement" rule provides that "Congress may expressly preempt state law by enacting a clear statement to that effect." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 959 F.3d 1201, 1211 (9th Cir. 2020), *cert. denied sub nom. Volkswagen Grp. of Am. v. Env't Prot. Comm'n*, 142 S. Ct. 521 (2021). Express preemption is a question of statutory construction, requiring a court to look to the plain wording of the statute and surrounding statutory framework to determine whether Congress intended to preempt state law. *Id.*; *Nat'l R.R. Passenger Corp. v. Su*, 41 F.4th 1147, 1152–53 (9th Cir. 2022). Of course, congressional purpose "is the ultimate touchstone in every pre-emption case," *Altria Grp. v. Good*, 555 U.S. 70, 76 (2008) (quotation and citation omitted), but the plain wording of the express preemption clause "necessarily contains the best evidence of Congress'[s] pre-emptive intent," *Puerto Rico v. Franklin Calif. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (citation omitted).[1]

COPPA's preemption clause provides:

> **No State or local government may impose any liability** for commercial activities or actions by operators in interstate or foreign commerce

---

[1] We assume without deciding that the presumption against preemption does not apply.

> in connection with an activity or action
> described in this chapter **that is inconsistent
> with the treatment of those activities or
> actions under this section.**

15 U.S.C. § 6502(d) (emphasis added).

Although the word "treatment" appears unique to COPPA's preemption clause, we note the similarity between this provision and other preemption clauses barring "inconsistent" state laws. Our decisions in *Metrophones*, *Ishikawa*, and *Beffa* each involved clauses preempting state laws "inconsistent" with federal statutes or regulations. *Metrophones*, 423 F.3d at 1072 (statute preempted "State requirements that are inconsistent with the Commission's regulations" (quoting 47 U.S.C. § 276(c))); *Ishikawa v. Delta Airlines*, 343 F.3d 1129, 1132 (9th Cir.), *amended on denial of reh'g*, 350 F.3d 915 (9th Cir. 2003) (statute preempted any "law, regulation, standard, or order that is inconsistent with regulations prescribed under this chapter" (quoting 49 U.S.C. § 45106(a))); *Beffa v. Bank of the West*, 152 F.3d 1174, 1177 (9th Cir. 1998) (statute preempted "any provision of the law of any State . . . inconsistent with this chapter" or such regulations (quoting 12 U.S.C. § 4007(b))).

In each of these cases, we have read the statutory term "inconsistent" in the preemption context to refer to contradictory state law requirements, or to requirements that stand as obstacles to federal objectives. We do not see that Congress's use of the phrase—"inconsistent with the treatment of those activities or actions"—distinguishes this case by changing the scope of the preemption clause. In these prior cases, where state law was not inconsistent with the methods of regulating, or treatment of, activities under

**Add. 11**

the federal statute, we found express preemption inapplicable. *See Metrophones*, 423 F.3d at 1073 (court must ask "whether state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (quotations and citation omitted)); *Beffa*, 152 F.3d at 1177 (statute did not preempt state law negligence causes of action "that supplement, rather than contradict" federal regulations); *Ishikawa*, 343 F.3d at 1132 ("[W]e cannot see how the duty the state common law imposed . . . could be inconsistent with the federal guidelines, which require the same thing with more specificity."). In each case, we held that the preemption clauses did not bar state tort or contract laws imposing obligations similar or identical to the substantive federal requirements. In short, state laws that "supplement," 152 F.3d at 1177, or "require the same thing," 343 F.3d at 1132, as federal law, do not "stand[] as an obstacle," 423 F.3d at 1073, to Congress's objectives, and so are not "inconsistent."

Given this context, we are not persuaded that the insertion of "treatment" in the preemption clause here evinces clear congressional intent to create an *exclusive* remedial scheme for enforcement of COPPA requirements. Since the bar on "inconsistent" state laws implicitly preserves "consistent" state substantive laws, it would be nonsensical to assume Congress intended to simultaneously preclude all state remedies for violations of those laws. If exercising state-law remedies does not stand as an obstacle to COPPA in purpose or effect, then those remedies are treatments consistent with COPPA. *Cf. Arellano v. Clark Cnty. Collection Serv., LLC*, 875 F.3d 1213, 1218 (9th Cir. 2017) (holding the Federal Debt Collection Practices Act preempted state debt execution mechanisms because those

mechanisms would enable debt collectors to "evade the restrictions of the Act" and thus "thwart enforcement of the [Act] and undermine its purpose").

Our reasoning comports with the long line of cases holding that a state law damages remedy for conduct already proscribed by federal regulations is not preempted. *Cf. Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 448 (2005) ("To be sure, the threat of a damages remedy will give manufacturers an additional cause to comply, but the requirements imposed on them under state and federal law do not differ."); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996) ("Nothing in [21 U.S.C.] § 360k denies Florida the right to provide a traditional damages remedy for violations of common-law duties when those duties parallel federal requirements."); *Wigod v. Wells Fargo Bank*, 673 F.3d 547, 581 (7th Cir. 2012) ("The absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law.").

We hold that COPPA's preemption clause does not bar state-law causes of action that are parallel to, or proscribe the same conduct forbidden by, COPPA. Express preemption therefore does not apply to the Children's claims.

## II. Conflict Preemption

Even if express preemption is not applicable, "[p]re-emptive intent may also be inferred" through conflict preemption principles, *Altria*, 555 U.S. at 76–77, that is, "when state law conflicts with a federal statute," *Ass'n des Éleveurs de Canards et d'Oies du Québec v. Bonta*, 33 F.4th 1107, 1114 (9th Cir. 2022). There are two types of conflict preemption: (1) "'conflicts' that prevent or frustrate the accomplishment of a federal objective," and (2) "'conflicts'

that make it impossible for private parties to comply with both state and federal law." *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 873 (2000). Only the first type, which turns on Congress's "objective" in enacting COPPA, is at issue here.

Although express and conflict preemption are analytically distinct inquiries, they effectively collapse into one when the preemption clause uses the term "inconsistent." *Metrophones*, 423 F.3d at 1073. Under either approach, the question is "whether 'state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'" or the regulatory agency with rulemaking authority. *Id.* (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992)).

For the same reasons that we conclude there is no express preemption, we conclude that conflict preemption does not bar the Children's claims. We reverse the district court's dismissal of the third amended complaint on preemption grounds. We remand so that the district court can consider in the first instance the alternative arguments for dismissal, to the extent those arguments were properly preserved.

**REVERSED AND REMANDED.**

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2023, I filed the foregoing Petition with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

January 25, 2023                            /s/ Edith Ramirez
                                            Edith Ramirez